UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

GREG RUBENACKER,

    Defendant.

Case No. 21-cr-193-BAH

**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this supplemental sentencing memorandum in opposition to certain arguments in the defendant, Greg Rubenacker's memorandum filed on May 6, 2022 (ECF 55), in connection with this case.

United States Sentencing Guidelines ("USSG") § 2J1.2, which applies to the "Obstruction of Justice," provides for an eight-level increase if the offense involved causing or threatening injury to a person or damage to property "in order to obstruct the administration of justice." USSG § 2J1.2(b)(1)(B). It also provides for a three-level increase "if the offense resulted in substantial interference with the administration of justice." USSG § 2J1.2(b)(2). Rubenacker argues that neither of these specific offense characteristics is applicable to his conduct in this case. He primarily asserts that his actions on January 6, 2021 did not relate to the "administration of justice," because they had "no connection to a judicial or grand jury proceeding." ECF 55 at 11. That argument is without merit.

Rubenacker fails to account for USSG § 2J1.2's text and commentary. *See* USSG § 1B1.1(b) ("The court shall then consider … any other policy statements or commentary in the guidelines that might warrant consideration in imposing sentence."). As explained in the

government's sentencing memorandum (ECF 56 at 32-33), § 2J1.2's commentary provides a broad definition of "administration of justice." It defines the term "[s]ubstantial interference with the administration of justice" to include "a premature or improper termination of a felony investigation; an indictment, verdict, or any judicial determination based on perjury, false testimony, or other false evidence; or *the unnecessary expenditure of substantial governmental or court resources*." USSG § 2J1.2 cmt. n.1 (emphasis added). This definition goes well beyond "a judicial or grand jury proceeding" to include the unnecessary expenditure of substantial "governmental" resources. *Id.* And because note 1 is part of the commentary of § 2J1.2 "that interprets or explains a guideline," it is "authoritative unless [the commentary] violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993).

Other courts, as noted in the government's sentencing memorandum (ECF 56 at 33-34), have applied USSG § 2J1.2(b)(2) to proceedings that would not fit the defendant's narrow definition of the "administration of justice." ECF 56 at 33-34 (citing *United States v. Ali*, 864 F.3d 573, 574 (7th Cir. 2017) (upholding the application of § 2J1.2(b)(2) after law enforcement officials expended substantial resources to recover the defendant's children he kidnapped and transported internationally); *United States v. Atlantic States Cast Iron Pipe Co.*, 627 F. Supp. 2d 180, 205-08 (D.N.J. 2009) (applying § 2J1.2(b)(2) after a defendant interfered with OSHA investigations into a workplace accident); *United States v. Weissman*, 22 F. Supp. 2d 187, 194-98 (S.D.N.Y. 1998) (applying § 2J1.2(b)(2) after a defendant withheld subpoenaed documents from a congressional subcommittee); *United States v. Pegg*, 812 F. App'x 851, 860 (11th Cir. 2020) (upholding the application of § 2J1.2(b)(2) where defendant's "scheme and lies caused a substantial waste of resources, including hundreds of hours of work from the investigators") (citing *United States v.*

2

*Johnson*, 485 F.3d 1264, 1271–72) (11th Cir. 2007)); *United States v. Meredith*, 602 F. App'x 102, 103 (4th Cir. 2015) (same); *United States v. Tankersley*, 296 F.3d 620, 623–24 (7th Cir. 2002) (same); *United States v. Harrington*, 82 F.3d 83, 87 n.2 (5th Cir. 1996), *as modified on reh'g* (Apr. 17, 1996) (same); *United States v. Voss*, 82 F.3d 1521, 1532 (10th Cir. 1996) (same)).

Although the commentary defines only the term "substantial interference with the administration of justice" in USSG § 2J1.2(b)(2), and not the term "in order to obstruct the administration of justice" in USSG § 2J1.2(b)(1)(B), the defendant offers no sound reason to interpret the same term in two specific offense characteristics in the same guideline differently. The relevant term in both provisions, "administration of justice," is identical. And the operative verbs, "interfere[]" and "obstruct," carry the same meaning in this context. The adjective "substantial" does not change the meaning of "administration of justice," especially since the commentary repeats the word, requiring "the unnecessary expenditure of substantial governmental . . . resources." USSG § 2J1.2 cmt. n.1. Thus, the term "in order to obstruct the administration of justice" in USSG § 2J1.2(b)(1)(B) should be read to include obstructive conduct aimed at nonjudicial governmental activities. A different conclusion would lead to the unlikely result of two different meanings for the term "administration of justice" within the same guideline.

The definition of "administration of justice" in § 2J1.2 cmt. n.1 is consistent with the term's ordinary meaning, which can encompass the application or execution of any law, including the laws relating to the electoral certification. One meaning of "justice," for example, is "[t]he fair and proper administration of laws." Black's Law Dictionary (11th ed. 2019) (definition 4). And some cases have defined "administration of justice" to mean "the performance of acts or duties required by law," *Rosner v. United States*, 10 F.2d 675, 676 (2d Cir. 1926) (quotation omitted), or "the performance of acts required by law in the discharge of duties such as appearing as a witness and

3

giving truthful testimony when subpoenaed," *United States v. Partin*, 552 F.2d 621, 641 (5th Cir. 1977). The electoral certification easily falls within this broad understanding of "administration of justice," because it involved Congress's performance of duties required by law. *See* U.S. Const. art. II, § 1, cl. 3; 3 U.S.C. §§ 15-18.

Further, USSG § 2J1.2 applies to an array of obstruction statutes, including a number that do *not* involve the "administration of justice" in the narrow sense that the defendant advocates (i.e., relating to judicial proceedings). *See* USSG § 2J1.2 cmt.; USSG Appendix A; 18 U.S.C. §§ 551 (concealing or destroying invoices or papers relating to imported merchandise); 665(c) (obstructing an investigation under the Workforce Innovation and Opportunity Act); 1505 (obstruction of proceedings before departments, agencies, and committees), 1511 (obstruction of enforcement of state gambling laws), 1512 (obstruction of official proceedings), 1516 (obstruction of a federal audit), 1519 (destruction of documents in agency investigations); 26 U.S.C. § 7212 (interfering with the administration of the Internal Revenue Code). Yet, under Rubenacker's interpretation of the guideline, enhancements under §§ 2J1.2(b)(1)(B) and (b)(2) would not apply to any of those statutes.

"A principal purpose of the Sentencing Guidelines is to promote uniformity in sentencing imposed by different federal courts for similar criminal conduct. *Hughes v. United States*, 138 S. Ct. 1765, 1774 (2018). The Guidelines therefore seek to achieve "a strong connection between the sentence imposed and the offender's real conduct." *United States v. Booker*, 543 U.S. 220, 246 (2005). Consistent with this purpose, USSG § 2J1.2 sets forth several specific offense characteristics that provide sentencing courts with tools to adequately address the "[n]umerous offenses of varying seriousness" that "may constitute obstruction of justice." USSG § 2J1.2 cmt. Background. The Sentencing Commission quite reasonably determined that obstructing justice by

4


causing or threatening injury or property damage is more serious and deserves greater punishment. And causing or threatening injury to obstruct a congressional proceeding is just as serious as doing so to obstruct judicial proceedings. To avoid making §§ 2J1.2(b)(1)(B) and (b)(2) inapplicable to many of the statutes for which the guideline was designed, the commentary's broad definition of "administration of justice" should apply, as its text makes clear, beyond just judicial proceedings.

Rubenacker resists this straightforward reading of the sentencing guidelines by referring instead to how courts have interpreted the phrase "administration of justice" in entirely different statutes and contexts. *See* ECF 55 at 12-15. He relies principally on *United States v. Aguilar*, 515 U.S. 593 (1995), *United States v. Richardson*, 676 F.3d 491 (5th Cir. 2012), and *United States v. Montgomery*, No. CR 21-46 (RDM), 2021 WL 6134591 (D.D.C. Dec. 28, 2021), which shed no light on the question in this case. In *Aguilar*, the Supreme Court considered whether a defendant who lied to federal agents during an interview violated 18 U.S.C. § 1503, which provided in full:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

*Aguilar*, 515 U.S. at 598 (citing 18 U.S.C. § 1503). The Court ultimately concluded that, to violate the catchall provision prohibiting "influenc[ing], obstruct[ing], or imped[ing], the due administration of justice," the government must show some "nexus" between the defendant's act and "judicial proceedings," such as court or grand jury proceedings. *Id*. at 599-600. Similarly, in

5

*Richardson*, the Fifth Circuit considered whether a defendant's false representations violated 18 U.S.C. § 1503 and highlighted the same "nexus" requirement between the defendant's actions and judicial proceedings.

*Aguilar* and *Richardson* interpreted the term "administration of justice" as that term is used in § 1503, which expressly addressed obstruction aimed at "grand or petit juror[s]," federal court officers, and magistrate judges. 18 U.S.C. § 1503(a). In that context, it was unsurprising that the courts treated "administration of justice" as essentially synonymous with "judicial or grand jury proceedings." *Aguilar*, 515 U.S. at 599. But *Aguilar* and *Richardson* focused on § 1503's "nexus" requirement and had no reason to address—and did not address—whether the "administration of justice" could include non-judicial proceedings outside the context of § 1503, let alone whether that term carries a broader meaning in USSG § 2J1.2 in light of that guideline's commentary. The Supreme Court has made clear that a term can have a different meaning in the Sentencing Guidelines than it does in a statute. *DePierre v. United States*, 564 U.S. 70, 87 (2011). And, as noted above, the guideline here (unlike 18 U.S.C. § 1503) includes its own definition focused on the "administration of justice," which covers "governmental *or* court" resources and intentionally applies to a wide variety of obstruction statutes, of which 18 U.S.C. § 1503 is but one.

Rubenacker's reliance on *Montgomery*, 2021 WL 6134591, is equally unavailing. There, another judge on this Court addressed challenges to 18 U.S.C. § 1512(c)(2)'s application to the conduct at the Capitol on January 6, 2021. Section 1512(c)(2) prohibits, in relevant part, "corruptly . . . obstruct[ing], influenc[ing], or imped[ing] any official proceeding." 18 U.S.C. § 1512(c)(2). The Court rejected the defendant's argument that an "official proceeding" under § 1512(c)(2) must be "court-like" or "relate to the administration of justice." *Montgomery*, 2021 WL 6134591 at *4. The Court noted that the term "official proceeding" is defined to include "a proceeding before the

6

Congress," 18 U.S.C. § 1515(a)(1)(B), and the Court stated that "with two narrow exceptions" (impeachment and qualification of its members), "Congress does not engage in adjudicative proceedings . . . or in the 'administration of justice.'" *Montgomery*, 2021 WL 6134591 at *7. Thus, the defendant could not establish that the term "proceeding before the Congress" in § 1515 (and as relevant to § 1512(c)(2)) was limited to "proceedings that are 'quasi-judicial' or that involve the 'administration of justice.'" *Id.* at *7.

The Court in *Montgomery* said nothing about the meaning of "administration of justice" as used in USSG § 2J1.2, which applies to a broad swath of obstruction statutes that reach obstruction of non-judicial proceedings. In fact, Judge Moss later sentenced another defendant, Paul Hodgkins, for his conduct at the Capitol on January 6 and applied § 2J1.2(b)(2). *United States v. Paul Hodgkins*, 21-CR-188 (RDM). Although both parties agreed to the enhancement's applicability, the Court, as in all cases, retained the sole authority to determine what enhancements to apply and what sentence to impose.

Rubenacker suggests that the challenged enhancements pre-date Congress's addition of the term "official proceeding" to 18 U.S.C. § 1512. *See* ECF 55 at 13. That is incorrect. Although Congress added § 1512(c) in 2002 in the Sarbanes-Oxley Act, the definition of an "official proceeding" was enacted in 1982, before the sentencing guidelines were promulgated in 1984. *See* Victim and Witness Protection Act of 1982 (VWPA), Pub. L. No. 97-291, 96 Stat. 1248, 1249-50. In Rubenacker's view, Congress simply overlooked application of specific offense characteristics for defendants who substantially interfere with, or cause or threaten to cause physical injury or property damage in order to obstruct a "proceeding before the Congress," 18 U.S.C. § 1515(a)(1)(B), or a "proceeding before a Federal Government agency," § 1515(a)(1)(C), or a

"proceeding involving the business of insurance," § 1515(a)(1)(D). This Court should not read the guidelines to create such a gap.

Notably, there are judges on this Court who have applied at least one, and sometimes both, of the "administration of justice" enhancements in the context of the Capitol breach on January 6, in cases where the parties agreed to their application. *See, e.g.*, *United States v. Duke Wilson*, No. 21-CR-345 (Lamberth, J.); *United States v. Paul Hodgkins*, No. 21-CR-188 (Moss, J.); *United States v. Scott Fairlamb*, No. 21-CR-120 (Lamberth, J.); *United States v. Jacob Chansley*, No. 21-CR-3, (Lamberth, J.). Probation therefore correctly rejected Rubenacker's objections to the applicability of the "administration of justice" enhancements here. ECF 52 at ¶¶ 51-52.

Probation also correctly concluded that both enhancements apply to Rubenacker's conduct. ECF 52 at ¶¶ 51-52. Rubenacker was in the United States Capitol for nearly an hour after breaching the building twice, both times as part of a violent mob of people who assaulted officers and damaged property—all while Congress was, by law, required to be engaged in a joint session to certify the Electoral College vote of the 2020 presidential election. Inside, he chased a United States Capitol Police officer, assaulted other officers by hitting them with a bottle and throwing liquid on them, smoked marijuana inside the building, and engaged in conduct that compelled police officers to deploy chemical-irritant spray toward him and others on multiple occasions. All of this conduct resulted in "substantial interference with the administration of justice," because it contributed to the "unnecessary expenditure of substantial governmental . . . resources," warranting the enhancement under USSG § 2J1.2(b)(2), as detailed in the government's sentencing memorandum (ECF 55 at 34-35). And the physical and violent manner in which the defendant substantially interfered with the administration of justice warrants additional punishment. Rubenacker himself later told another individual he "*fought* for [others'] constitutional rights." *Id*.

at 29 (emphasis added). Because Rubenacker's conduct "involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice," the enhancement under USSG § 2J.2(b)(1)(B) is applicable, as noted in the government's sentencing memorandum. ECF 56 at 32 n.9.

Rubenacker's claim (ECF 55 at 11-12) that the basis for his conviction under Count Two, 18 U.S.C. § 1512(c)(2), is limited to his conduct during his first breach of the Capitol (chasing Officer Goodman) misses the mark. First, it is reasonably foreseeable that chasing Officer Goodman as part of a mob that significantly outnumbered the officer could, by itself, lead to physical injury of Officer Goodman. Second, and more importantly, there is no basis for excluding from the analysis Rubenacker's second Capitol breach a mere 24 minutes later, during which he spent nearly 40 minutes inside pushing toward the Senate Chamber with a mob of others, smoking marijuana in the Rotunda, refusing to leave and assaulting officers in the Rotunda, causing officers to deploy chemical-irritant spray to disperse him and others from the building, and pouring water over himself inside the East Rotunda lobby. All of this conduct could likely lead to physical injury of another or property damage, and all of this conduct contributed to the delay of the congressional proceeding which did not restart until about 8:00 p.m., after law enforcement officers and National Guard soldiers removed every rioter from the building including Rubenacker. Thus, all of Rubenacker's conduct on January 6 is relevant, and it satisfies both enhancements under USSG §§ 2J1.2(b)(1)(B) and (b)(2). *See* USSG 1B1.3 ("Unless otherwise specified, . . . specific offense characteristics . . . shall be determined on the basis of . . . *all* acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . [and] all harm that resulted from the acts and omissions specified . . . above, and all harm that was the object of such acts and omissions.").

For the reasons set forth above and in its sentencing memorandum (ECF 56), the government recommends that the Court apply the "administration of justice" enhancements under USSG §§ 2J1.2(b)(1)(B) and (b)(2), and impose a sentence of imprisonment of 46 months, 3 years' supervised release, $2,000 in restitution, and the mandatory $100 special assessment for each count of conviction.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

BY: _____
TROY A. EDWARDS, JR.
N.Y. Bar No. 5453741
Assistant United States Attorney
United States Attorney's Office
District of Columbia
601 D Street NW,
Washington, D.C. 20530
(202) 252-7081
Troy.Edwards@usdoj.gov