IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------------------------------------------x

UNITED STATES OF AMERICA

v.

GREG RUBENACKER,

Defendant.

---------------------------------------------------------------x

Criminal Case No. 21-CR-193-BAH

## SUPPLEMENTAL SENTENCING MEMORANDUM OF GREG RUBENACKER

Comes Now Defendant, Greg Rubenacker ("Rubenacker") by and through his attorneys The Matera Law Firm by Michaelangelo Matera and files this Supplemental Sentencing Memorandum in opposition to the arguments set forth by the Government in its Supplemental Sentencing Memorandum filed with the Court on May 18, 2022. (Dkt#59)

The law is clear that an indispensable part of arriving at a reasonable sentence is a correct calculation of the advisory guidelines range. (*United States v. Cooper*, 437 F.3d 324, 330 (3d Cir.2006) In their Supplemental Sentencing Memorandum, the Government has reiterated their position that enhancements under USSG §§2J1.2(b)(1)(B) and 2J1.2(b)(2), for a total enhancement of eleven levels, are warranted. As will be set forth herein, the Government is wrong as these enhancements are not applicable to the instant matter for several reasons. The Defendant respectfully submits that the correct calculation of the adjusted offense level in this matter should be 17. As such, the appropriate Guideline range is 24-30 months.

## I. The facts supporting the Obstruction of Justice charge do not involve the administration of justice.

The Government focuses on the commentary of §2J1.1, and in particular, the definition section where a definition is given for "substantial interference with the administration of justice" which, as stated, includes, "a premature or improper termination of a felony investigation; an indictment, verdict, or any judicial determination based on perjury, false testimony, or other false evidence; or the unnecessary expenditure of substantial governmental court resources." (USSG §2J1.2 commentary) The Government argues that *"the unnecessary expenditure of substantial governmental or court resources"* is a catch all phrase that goes beyond a judicial or grand jury proceeding. In making this argument, the Government is ignoring the preceding language. A review of the same easily reveals that the intention of §2J1.2(b)(2) was to address situations related to matters connected to judicial or quasi-judicial proceedings.

We agree that the intention was to extend the situations where the enhancement would apply to situations where unnecessary and substantial expenditures were incurred however, those expenditures still need to be related to a judicial or quasi-judicial proceeding. The cases that have upheld the application of the enhancement deal with situations such as perjury which results in additional or wrongful prosecutions which result in the unnecessary utilization of court resources that would not have been necessary but for the defendant's actions. (*See, United States v. Johnson*, 485 F.3d 1264 (11th Cir. 2007)) They have also dealt with interference with investigations or absconding with children which resulted in the unnecessary expenditure of governmental resources to properly complete investigations or to retrieve an individual who has avoided justice by fleeing with children in violation of court orders. (*See, United States v. Ali*, 864 F.3d 573 (7th Cir. 2017)) The fact remains that all of these situations are related, however loosely, to judicial proceedings.

The Government has the burden of proving the applicability of the enhancement and they have

2

not produced any authority whatsoever for the argument that the administration of justice was meant to apply to the electoral certification that was taking place on January 6th. Black's Law Dictionary defines "justice" as, "Protecting rights and punishing wrongs using fairness." This is the very function of a court and governmental agency and is consistent with the intended application of §2J1.1. However, no stretching of the definition could lead to the conclusion that "administration of justice" was meant to apply to the certification of an election.

The Government has cited to several cases that they claim support their position that "administration of justice" goes beyond judicial and quasi-judicial related matters. A review of these case easily reveals their position to be incorrect. They first cite to the aforementioned matter of *United States v. Ali*, 864 F.3d 573 (7th Cir. 2017). While *Ali* did discuss the expenditure of substantial resources, the case had to do with a *court order* that prohibited the defendant from taking the children out of Illinois and was a clear violation of the lawful exercise of the parental rights of the mother. The government had to expend substantial resources to get the children back and protect the mother's rights and uphold the court order. They next cite to *United States v. Atlantic States Cast Iron Pipe Co.*, 627 F.Supp 1d 180, (DNJ 2009). The case dealt with defendants who were found to have committed perjury and altered documents, amongst other offenses, with the intention to disrupt an OSHA investigation. As such, the investigation focused on an investigation and proceeding with a Federal Governmental Agency (OSHA). A proceeding before a Federal Governmental Agency is considered to be an administrative proceeding and as such was clearly intended to be covered by §2J1.1. (*Atlantic States Cast Iron Pipe Co.* at 198; *See also, United States v. Montgomery* (21-cr-46 at p.15) wherein Judge Moss made clear that a proceeding before a federal agency is "administrative" and is different from a "proceeding before the Congress" which is exactly what the electoral certification was)

Another case cited in the Government's papers is *United States v. Pegg*, 812 F.App'x 851(11th Cir. 2020) though it is unclear why as the facts of the case lend further support for the Defendant's position. A review of *Pegg* shows that the case involved a defendant who interfered with a federal criminal investigation by lying to federal agents and engaging in a scheme that prevented the government from prosecuting another individual. As such, we do not dispute that the enhancement was proper as it was clearly related to a felony investigation. In fact, the *Pegg* court makes specific reference to other cases such as *United States v. Johnson*, 485 F.3d 1264 (11th Cir. 2007) in which the court applied the enhancement to a defendant who gave false testimony before a *grand jury* which resulted in a substantial expenditure of resources. As Defendant has argued in his initial Sentencing Memorandum, the enhancement was meant to apply to judicial related matters including grand jury presentations.

The Government next argues that Defendant has not offered any reason to interpret the term "substantial interference with the administration of justice" differently in §§2J1.2(b)(1)(B) and 2J1.2(b)(2). We cannot agree as we do not agree that the term "administration of justice" was meant to apply to nonjudicial governmental activities or administrative proceedings which are quasi-judicial. In fact, Judge Moss in *Montgomery* refused to accept the defendant's argument that a proceeding before Congress means a, "…"quasi-judicial" proceeding or a proceeding involving the "administration of justice." As a matter of separation of powers, that is not what Congress does." (*Montgomery* at p.14)

The Government attempts to stretch the plain and clear meaning of the term "justice" as defined in Black's Law Dictionary to the electoral certification. For all of the reasons previously stated herein, their argument fails. The Government further attempts to support its position by citing to the case of *Rosner v. United States*, 10 F.2d 675 (2d Cir. 1926) but the case does not support their position at all. In fact, the court in *Rosner* made it clear that it was discussing the "administration of justice"

4

in conjunction with a judicial proceeding and itself cites to several cases all of which involve judicial proceedings. This is also the case with *United States v. Partin*, 552 F.2d 621 (5th Cir. 1977) cited by the Government which specifically had to do with obstruction charges stemming from perjured testimony and a grand jury proceeding. As such, it is not surprising that the court would discuss the "administration of justice" involving the performance of acts required by law as the individual received a subpoena and was required to give truthful testimony. To suggest that the usage of the words of the court could be stretched to apply to Congress's performance of its duties in the electoral certification is just false as again, a "proceeding before Congress" is simply put not a proceeding involving the "administration of justice." (*Montgomery* at p.14)

Defendant in his Sentencing Memorandum has cited to numerous cases which have addressed issues involving the "administration of justice". (*See, United States v. Richardson*, 676 F.3d 491 (5th Cir. 2012) where the court defined "due administration of justice" as the performance of acts required by law in the discharge of duties such as appearing as a witness and giving truthful testimony when subpoenaed"; *United States v. Aguilar*, 515 U.S. 593 (1995) where the Supreme Court stated that any action by an accused must be accompanied with the intent to influence judicial or grand jury proceedings") The Government argues that the Defendant, in citing to these cases, is being too limited in his argument since these cases only dealt with judicial proceedings and thus it is not surprising that they didn't discuss non-judicial proceedings. However, as previously shown herein, the Government has failed to show through its own cases cited to that "administration of justice" was meant to include non-judicial proceedings. Defendant on the other hand has demonstrated, via the cases previously mentioned herein and others mentioned in his Sentencing Memorandum, that the term was meant to include judicial and quasi-judicial proceedings only.

The Government cannot escape the clear intended application of §§2J1.2(b)(1)(B) and 2J1.2(b)(2). As previously mentioned, they seek to extend the last part of the commentary past what

5

was intended. But to determine the clear intention, one only has to look at the remainder of the definition of "substantial interference with the administration of justice." Everything listed has to do with matters related to a judicial or quasi-judicial matter. To suggest that the portion that mentions "the unnecessary expenditure of substantial governmental or court resources" was meant to refer to any time the government expends unnecessary resources is a complete overreach and not supported by the caselaw. If that were the intention, the wording could have easily stated so. It is clear that the last clause was intended to be read in conjunction with the previous portion and as such, it is clear that the unnecessary expenditure of resources still needs to be in connection with a judicial or quasi-judicial matter.

Courts have addressed the issue of whether or not the term "due administration of justice" may involve proceedings other than those pending in a court but even then it was held that the matters needed to have a nexus to an investigation or a judicial function. Although in the context of a criminal statute (§18 USC 1503), in *Haili v. United States,* 260 F.2d 744 (9th Cir.1958), the court held that, "Speaking generally, it might be said that many matters other than proceedings pending in court have to do with the administration of justice. Thus, the gathering of evidence and procuring of statements of witnesses by the Federal Bureau of Investigation is in a general way a functioning of the federal government with respect to the administration of justice." (*Haili* at 745) The court went on to make reference to the case of *United States v. Scoratow,* 137 F. Supp. 620 (DCWD.Pa.) where the court noted that the phrase "due administration of justice" in § 1503 was "qualified and limited by the enumeration of specific judicial functions concerned with the `administration' of justice in the preceding portion of the section." (*Id.*)

As argued in Defendant's Sentencing Memorandum, it cannot be the case that the phrase "administration of justice" was intended to mean one thing in the criminal statutes such as §1503

and something completely different in the Guidelines without a clear indication that such was intended to be the case. No such indication exists.

The Government's argument that other judges on this Court have applied at least one and sometimes both of the enhancements to January 6th cases is unavailing and quite mystifying. Each of the cases mentioned by the Government in its papers (Dkt#59 at p.8) concluded with a plea agreement with the Government. The Government knows full well that as part of each plea agreement, each defendant mentioned was required to waive his right to dispute the Government's calculation of the appropriate offense level and agree to their determination that the enhancements applied. As such, there was no need for the judges in those cases to address the application of the enhancements. As this Court is well aware, Rubenacker opted to plead guilty to the entire indictment rather than accept the Government's determination and requirement that he agree to waive his rights to dispute the same.

Obviously, the Government, in requiring defendants to waive their right to dispute their determination of the appropriate offense level, was concerned as to the applicability of the enhancements. The Government is well aware of all of this and should not be heard to now use cases that they required such a waiver as a basis for their argument.

Simply put, the Government has failed to meet its burden in its attempt to show that the electoral certification was either a judicial or quasi-judicial proceeding. Nor has it set forth even a single ounce of authority to support its argument that the "administration of justice" was intended to include the electoral certification. As such, it is clear that the enhancements under §§2J1.2(b)(1)(B) and 2J1.2(b)(2) were not intended to apply to the facts of the instant matter and the 11-level enhancement should not be applied.

## II. The Defendant did not cause or threaten to cause physical injury to anyone and as such, §2J1.2(b)(1)(B) does not apply to the instant matter.

Further evidence that the 8-level enhancement contained in §2J1.2(b)(1)(B) does not apply is the fact that at no time did Mr. Rubenacker cause of threaten to cause physical injury to anyone. As it is not disputed that Rubenacker actually caused physical injury to anyone, we will focus our argument on the second part of §2J1.2(b)(1)(B), the threatening to cause physical injury to anyone.

In order for the enhancement under §2J1.2(b)(1)(B) to apply, the Government must prove two elements by a preponderance of the evidence. First, the Defendant's offense must involve "threatening to cause physical injury to a person." This element requires that the defendant "communicated an intent to inflict physical injury on another. Second, the defendant must have made that threat "in order to obstruct the administration of justice." (*United States v. Ulibarri*, 115 F.Supp.3d 1308 (DNM 2015)) In the instant matter, there again is no evidence that the Defendant communicated any threat let alone made a threat in order to obstruct the administration of justice.

As the court stated in *Ulbarri,* the *Oxford English Dictionary* defines a threat as "declar[ing] (usually conditionally) one's intention of inflicting injury upon" a person. (*Ulbarri* at 1332, *quoting Oxford English Dictionary* 352 (2d ed.1998) The court also looked to *Webster's Third New International Dictionary* and noted that it defines threat as an "expression of an intention to inflict loss or harm on another by illegal means and esp[ecially] by means involving coercion or duress of the person threatened." (*Id.*, *quoting Webster's Third New International Dictionary* 2382 (1993)) *American Heritage Dictionary of the English Language* 1801 (4th ed. 2000) defines threat as an expression of an intention to inflict pain, injury, evil, or punishment." (*Id.*)

The inescapable truth is that there is absolutely no evidence that the Defendant threatened to cause physical injury to anyone. In fact, a review of the Government's papers reveals that they have not claimed that Rubenacker actually made any threats to cause physical injury to anyone or their

8

property. Instead, they are arguing that the Defendant was part of a mob that pursued Officer Goodman and that this could have led to an injury to the Officer. While we do not condone or seek to minimize the Defendant's actions in following the Officer, an act for which he has expressed his deep regret, there is no support that such action can constitute a threat to cause physical injury. Further, while it is true that there were numerous people who were in the group that Rubenacker followed up the staircase, he did not know a single one of them and did not act in concert with any of them and did not hear the words that they were apparently saying in all of the commotion. Nor is he charged as a co-defendant with them. To the extent that any threats may have been made by them, they were not made by Rubenacker.

The video evidence shows the Defendant walking up the staircases but at no time while on those staircases does the defendant yell anything at anyone, let alone threaten to cause physical injury to anyone. Defendant did point and yell at officers but at no time did he make any threats to cause physical injury, instead voicing his admittedly misplaced and mistaken perception that the officers were not standing with those who were upset over the election results which they mistakenly believed at the time to have been corrupted.

The Government next argues that the actions of Rubenacker the second time that he entered the Capitol and proceeded to the Rotunda where he was ultimately encountered by members of law enforcement can be considered a threat of physical violence. However, in light of the way that the Government has handled some other cases from the January 6th incident, it is hard to accept their argument as having any merit. This incident took place after the members of Congress were removed and after Rubenacker regrettably filmed himself smoking marijuana inside the Rotunda and posing for photographs with the statuary. The electoral certification process had already been halted. Further, if the Government is going to claim that the incident in the Rotunda could still form the basis for the obstruction charge then it begs the question why they did not seek pleas to the obstruction

charge for individuals who committed much more egregious acts against officers just outside of the Capitol doors, some literally hanging from the entry way.

The Government has stated in plea negotiations that in determining whether to apply the obstruction charge to a particular case, they drew a line in the sand so to speak and agreed to enter plea agreements whereby they dismissed the obstruction charge as to anyone who did not enter the Capitol building despite their best efforts to do so. The Government in doing so decided that these individuals could not have obstructed the proceedings from that distance which was not all that far from where Rubenacker was at the time of the incident in the Rotunda. So what make's Rubenacker's conduct at that moment any different than those individuals?

Additionally, the Government can not show that Rubenacker, by his actions of swinging a plastic bottle at an officer and splashing water in the direction of other officers, did so with the specific intent of obstructing the administration of justice even if we overlook the fact that the electoral certification did not constitute the administration of justice. §2J1.2(b)(1)(B) contains a *mens rea* "hook" which requires proof that at the moment of the act, it was the defendant's intention to obstruct the administration of justice. (*Ulibarri* at 1335) Again. in the instant matter, Rubenacker had just finished smoking marijuana and taking smiling selfies with the statuary. His actions at this point in time, as misguided and wrong as they were, were not done with the intent to obstruct the electoral certification but rather were the result of a horrible decision to react to officers who were performing their lawful duties to remove people from the building. Nothing more.

The Government attempts to also twist comments made by the Defendant an attribute a meaning to them that was never intended. It is true that Rubenacker at different points in time did yell at officers asking them things like, "why are you not protecting us?" and "this is a communist act". But certainly these words do not constitute threats to cause physical injury or damage to property. They will have this Court believe that Rubenacker's comment that he "fought for other's constitutional

rights" is somehow proof that he was meaning to convey that he engaged in physical violence. That argument is preposterous. Saying that he fought for someone's rights does not mean that he engaged in violence with the intention to obstruct justice. The word "fight" can just as easily mean to advocate without any violence whatsoever. If an attorney "fights" for his client, should we now claim that such a "fight" is anything more than properly advocating for their client? If an athlete on a baseball team "fought 'til the end" should we now claim that the athlete engaged in violence? Of course not, and as such, their claim must fail.

Speech alone cannot be criminalized, and one can only lose his or her First Amendment protections once he or she utters the same words with a criminal purpose. (*Id.*) There was no criminal purpose behind the words that Rubenacker uttered and certainly the Government has not proven any criminal purpose. As such, there is no evidence that he threatened to cause physical injury to anyone making the enhancement inapplicable in the instant matter.

The fact remains, that there is no proof whatsoever that the Defendant ever threatened to cause physical injury to anyone, nor did he threaten to damage anyone's property and as such, it is clear that §2J1.2(b)(1)(B) was not meant to and in fact is not properly applied to the instant matter.

### III. The Defendant's actions did not result in the unnecessary expenditure of substantial governmental or court resources and as such, §2J1.2(b)(2) does not apply to the instant matter.

As previously stated, the electoral certification does not involve the administration of justice. As such, the 3-level enhancement contained in §2J1.2(b)(2) is not applicable in the instant matter. However, even if we were to look past that fact, it is still clear that the enhancement contained in §2J1.2(b)(2) does not apply as there is no evidence that the Defendant's own actions resulted in the unnecessary expenditure of governmental resources.

In order for the enhancement to apply, the Government must (1) identify a particular expenditure of governmental resources (2) which but for the defendant's conduct would not have been expended and (3) was substantial in amount. (*United States v. Tackett*, 193 F.3d 880, 887 (6th Cir. 1999) In the instant matter, the Government has claimed that the substantial governmental resources included, "the deployment of hundreds of law enforcement officers, and ultimately National Guardsmen and Guardswomen…" as well as the repair and clean-up costs. (Dkt#56 at p.34) The Government however offers no support that it was Rubenacker's conduct that specifically caused the need for these resources.

As previously set forth, Rubenacker did not arrive at former President Trump's speech with anyone and had no plans to meet up with anyone. Nor for that matter did he know anyone there or agree to work in tandem with any other person or persons that day. There is no evidence, nor is it being claimed, that Rubenacker himself damaged any property on January 6th. The fact is that Rubenacker is but one person and it cannot be said that "but for [his] conduct" the resources would not have been expended as certainly the hundreds of law enforcement officers that the Government claims were deployed would not have been needed in response to Rubenacker's actions alone.

Every case that we have found on this issue deals with the expenditure of resources resulting from the actions of the specific defendant or, in the case where the defendant was found to be acting in concert with others, the actions of the group. Nor is there proof that Rubenacker was aiding and abetting any of the other individuals that were present that day. Aiding and abetting has the specific requirement that one helps or encourages another to commit an act and there is no proof that the Defendant helped or encouraged anyone. He may have shared some of the same misguided views as others there, views which he now has admitted were wrong, but that doesn't mean that he had the same intentions as they did. The indisputable fact is that countless others there that day had the clear intention of disruption and violence as they showed up armed for battle adorned in riot gear, wearing

goggles, wearing helmets, carrying lacrosse sticks taped to Confederate flags, carrying knives, carrying chemical spray agents, etc. Rubenacker showed up with an Essentia plastic water bottle, nothing more.

Further, Rubenacker's conduct in swinging the plastic bottle in the direction of an officer and splashing water in the direction of the officers cannot be said to have resulted in the expenditure involved in deploying hundreds of law enforcement officers as the Government claims because at the time of such conduct, the officers were already present. As such, it can't be said that but for this particular conduct the expenditure of the resources would not have been required since the expenditure was already completed, the officers were there.

As such, for all of the reasons stated, the 3-level enhancement contained in §2J1.2(b)(2) is not applicable in the instant matter.

## **CONCLUSION**

From the preceding along with Defendant's Sentencing Memorandum (Dkt#55), the Defendant respectfully submits that enhancements under USSG §§2J1.2(b)(1)(B) and 2J1.2(b)(2) are not applicable to the instant matter. As such, we submit that the appropriate adjusted offense level in this matter should be 17 and that the appropriate Guideline range is therefore 24-30 months.

We respectfully submit again that a downward departure is warranted for all of the reasons stated in Defendant's Sentencing Memorandum and that a sentence of twelve months of home confinement is more than fair under the circumstances and accomplishes all of the goals mentioned in said Sentencing Memorandum. Such a sentence would allow Mr. Rubenacker to pay his debt to society and thereafter continue on his career path before it is too late. We respectfully and humbly ask Your Honor to consider this sentence and its appropriateness and give Greg a chance to prove that what

happened by his hand on January 6th was an aberration and will never happen again.

DATED this 20th day of May, 20212

Respectfully submitted,

Michaelangelo Matera (MM1586)

The Matera Law Firm
*Attorneys for Greg Rubenacker*
560 Broadhollow Road, Suite 303
Melville, New York 11747
(516) 741-6700

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that a true and correct copy of the foregoing Supplemental Sentencing Memorandum was filed with the Clerk of the Court and the United States Attorney Office and Assistant United States Attorney, Mr. Troy Edwards, on this 20th day of May, 2022 via ECF.

Michaelangelo Matera (MM1586)

The Matera Law Firm
*Attorneys for Greg Rubenacker*
560 Broadhollow Road, Suite 303
Melville, New York 11747
(516) 741-6700