## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. 21-193 (BAH) |
| v. | |
| GREG RUBENACKER, | Judge Beryl A. Howell |
| Defendant. | |

### MEMORANDUM AND ORDER

Pending before the Court is defendant Greg Rubenacker's Motion for Release Pending Appeal ("Def.'s Mot."), ECF No. 83, in light of the Supreme Court's grant of certiorari in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir.), *cert. granted*, 144 S. Ct. 537 (2023), to resolve whether 18 U.S.C. § 1512(c)(2) applies to "acts unrelated to investigations and evidence," *see* Pet. Writ of Certiorari § i, *Fischer v. United States*, No. 23-5572 (Sept. 11, 2023) (presenting the question whether "the D.C. Circuit err[ed] in construing 18 U.S.C. § 1512(c) . . . which prohibits obstruction of congressional inquiries and investigations, to include acts unrelated to investigations and evidence"). Section 1512(c)(2) is among the criminal statutes defendant stands convicted of violating. The government opposes defendant's motion. *See* Gov't's Opp'n Def.'s Mot. ("Gov't's Opp'n"), ECF No. 85. For the reasons stated below, defendant's motion is DENIED.

### I.    BACKGROUND

Defendant was convicted, following his plea of guilty, without any plea agreement, on February 11, 2022, to all counts of a ten-count superseding indictment, including the charge, in Count Two, of Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2, along with two other felony charges—Civil Disorder, in violation of

1

18 U.S.C. § 231(a)(3) (Count One), and Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1) (Count Three)—and seven misdemeanor offenses.  Judgment at 1–2, ECF No. 77; *see also* Supers. Indictment at 1–5, ECF No. 33; Plea Hr'g Tr. at 30:1–3, 46:6–49:9, ECF No. 94.[1]

At the sentencing hearing, on May 26, 2022, the Court determined that defendant was in Criminal History Category I and, after grouping of all counts, had a total offense level of 22, resulting in an advisory guidelines sentencing range of 41 to 51 months' imprisonment. Sentencing Tr. at 82:6–9, ECF No. 70.  Specifically, U.S.S.G. § 2A2.2 applied to Counts One and Three, which were grouped pursuant to U.S.S.G. § 3D1.2(b), and were then grouped, pursuant to U.S.S.G. § 3D1.2(c), "with the four other counts subject to the guidelines," including Count Two. *Id.* at 31:10–32:2. The Court rejected defendant's objection that the guideline applicable to defendant's conviction on Count Three, U.S.S.G. § 2A2.2, controlled the sentencing range, *see id.* at 33:18–22, 34:20–24, 81:2–8, where that guideline provides a base offense level of 14, which would be increased by 6 offense levels under U.S.S.G. § 3A1.2(b), because the victim of the assaultive conduct was a law enforcement official, and reduced by 3 offense levels for acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in a total offense level of 17.   Instead, defendant's conviction on Count Two produced the highest offense level for the grouped offenses in Counts One through Six. *Id.* at 31:10–32:2, 81:2–8; *see* U.S.S.G. § 3D1.2(b)–(c).  As to this Group, the Court determined that U.S.S.G. § 2J1.2(a) applied to Count Two, with a base offense

---

[1]     Defendant is convicted of the following seven Class A and petty misdemeanor offenses: Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Four); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Five); Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4) (Count Six); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Seven); Impeding Passage Through the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(E) (Count Eight); Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count Nine); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Ten). *See* Supers. Indictment at 3–5.

level of 14, which was increased by: 8 offense levels, pursuant to U.S.S.G. § 2J1.2(b)(1)(B), "because the offense involved causing or threatening physical injury to a person, or property damage, in order to obstruct the administration of justice," Sentencing Tr. at 81:18–24; and 3 offense levels, pursuant to U.S.S.G. § 2J1.2(b)(2), "because the offense resulted in the substantial interference with the administration of justice, specifically the proceedings of Congress," resulting in a total offense level of 25, *id.* at 81:24–82:3, which was reduced by 3 offense levels for acceptance of responsibility, pursuant to U.S.S.G. §§ 3E1.1(a) and (b), *id.* at 82:4–6.[2]  The resulting total offense level was 22, *id.* at 82:6–9, and since the statutory maximum for the Class A misdemeanors charged in Counts Four, Five, and Six was 12 months' incarceration per count, the guideline sentence for each of those counts was 12 months, pursuant to U.S.S.G. § 5G1.1(a), *id.* at 82:10–12.[3]

The sentence imposed was the low-end of the advisory guidelines range of 41 months' imprisonment on each of Counts One, Two, and Three; the statutory maximum of 12 months' imprisonment on each of Counts Four, Five, and Six; and the statutory maximum of 6 months' imprisonment on each of Counts Seven, Eight, Nine, and Ten, to be followed by 36 months of supervised release as to Counts One, Two, and Three, and 12 months on each of Counts Four,

---

[2]        On March 1, 2024, the D.C. Circuit issued an opinion in *United States v. Brock*, No. 23-3045, 2024 WL 875795 (D.C. Cir. Mar. 1, 2024), holding that the three-level "'administration of justice' enhancement" under U.S.S.G. § 2J1.2(b)(2) does not apply to convictions under 18 U.S.C. § 1512(c)(2) for "interference with the legislative process of certifying electoral votes," *id.* at *1, *8 ("[F]or purposes of Sentencing Guideline 2J1.2, the phrase 'administration of justice' does not encompass Congress's role in the electoral certification process."). That decision has no impact on defendant's instant motion, which requires this Court to consider whether a *reversal* of defendant's conviction under Section 1512(c)(2), to which the three-point sentencing enhancement under U.S.S.G. § 2J1.2(b)(2) had been applied at sentencing, would "result in . . . a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process," 18 U.S.C. § 3143(b)(1)(B)(iv).  Moreover, should *Brock* prompt any resentencing on this conviction under Section 1512(c)(2), an upward variance of at least three offense levels to account for the significant disruption of a critical and important governmental function as a result of defendant's offense conduct would be appropriately applied.

[3]        The sentencing guidelines are inapplicable to Counts Seven, Eight, Nine, and Ten. *See* U.S.S.G. § 1B1.9; 40 U.S.C. § 5109(b).

Five, and Six, with terms of incarceration and supervised release to run concurrently. *Id.* at 159:18–25; Judgment, Statement of Reasons at 5–6, ECF No. 69.

Given defendant's satisfactory compliance while on pretrial release pending plea and sentencing, defendant was permitted, with consent of the government, to self-surrender to the facility designated by the U.S. Bureau of Prisons ("BOP"), on July 6, 2022. *See* Def.'s Mot. at 1; Sentencing Tr. at 163:20–165:8 (granting defendant's oral request for self-surrender); Minute Entry (Mar. 2, 2021) (placing "defendant [] on personal recognizance"). This plan changed, however, on the submission of a troubling pretrial violation report that prompted the Court to order defendant's detention and to begin his sentence on June 30, 2022. Minute Entry (June 30, 2022) (ordering defendant detained); Pretrial Violation Rep., ECF No. 76. Defendant has served 20 months' imprisonment, with an expected release date of December 26, 2024. *See Find an Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited March 4, 2024).

On June 13, 2022, defendant filed a notice of appeal of the judgment. *See* Notice of Appeal, *United States v. Rubenacker*, No. 22-3036 (D.C. Cir. June 13, 2022). On July 17, 2023, and November 17, 2023, the D.C. Circuit granted defendant's unopposed motions to hold his appeal in abeyance pending the D.C. Circuit's resolution of *United States v. Robertson*, No. 22-3062, and thereafter, pending the filing of a petition for rehearing or the disposition of such petition in *Robertson*, *see Rubenacker*, No. 22-3036 (D.C. Cir. July 17, 2023; Nov. 17, 2023), which case has itself since been held in abeyance pending the Supreme Court's disposition of *Fischer*, 144 S. Ct. 537 (2023) (cert. granted Dec. 13, 2023), *see* Order, *United States v. Robertson*, No. 22-3062 (D.C. Cir. Feb. 13, 2024).

Defendant has now filed the pending motion for release pending appeal, under 18 U.S.C. § 3143(b), arguing that the Supreme Court's grant of *certiorari* in *Fischer*, *see* 144 S. Ct. 537 (Dec.

4

13, 2023), "raises a substantial question of law that, if decided in his favor, would likely result in a reduced sentence that would expire before his appeal concludes," Def.'s Mot. at 1, and that "he poses no flight or safety risk," *id*.  With the filing on January 19, 2024, of the government's position opposing this motion for release, and on January 29, 2024, of defendant's reply, this motion is now ripe for review.  *See* Gov't's Opp'n; Def.'s Reply Supp. Mot. Release Pending Appeal ("Def.'s Reply"), ECF No. 87.

## II.   DISCUSSION

Courts are directed to "order the release" of an individual pending appeal upon finding, "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released," 18 U.S.C. § 3143(b)(1), and, in pertinent part, "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in . . .  (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process," *id*. § 3143(b)(1)(B)(iv); *see also* Charles Alan Wright et al., 3B FED. PRAC. & PROC. CRIM. § 770 (4th ed.).  Defendant bears the burden of showing that both statutory prongs are met.  *See United States v. Perholtz*, 836 F.2d 554, 555–56 (D.C. Cir. 1987) (per curiam) (recognizing "the required showing on the part of the defendant" as to "whether [an] appeal 'raises a substantial question of law or fact likely to result in reversal'" (quoting 18 U.S.C. § 3143(b)(1)(B))); *see also United States v. Zimny*, 857 F.3d 97, 101 (1st Cir. 2017) (noting that defendant has the "burden to show entitlement to release from custody pending appeal under § 3143(b)(1)"); *United States v. Libby*, 498 F. Supp. 2d 1, 3 (D.D.C. 2007) ("In enacting § 3143(b), Congress placed the burden as to all elements bearing on whether to grant bail pending appeal on the defendant." (quotation marks, brackets, and citation omitted)).  Defendant falls short of meeting these prerequisites for release pending appeal.

5

First, this Court cannot find by clear and convincing evidence that defendant "is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(b)(1)(A). Such a finding is undercut both by defendant's offense conduct on January 6, 2021 at the U.S. Capitol and by defendant's troubling conduct and attitude shortly before his scheduled self-surrender to serve his sentence that required revocation of his release. To begin, as this Court summarized at the sentencing hearing, defendant was among the first fifty people to breach the Capitol building, Sentencing Tr. at 154:20–155:4, and, while inside, defendant was "antagonistic" and "threatening" joining a "mob that approached Capitol Police Officer Eugene Goodman, greatly outnumbering him; yelling at him; [and] screaming obscenities at him," *id.* 148:2–21. Defendant then exited the Capitol only to "re-enter illegally . . . a second time" at a different location, "help[ing] the crowd violently push into the doors near the Rotunda until those had been breached, and they were able to stream inside." *Id.* at 155:18–156:4. Once back inside the Capitol and within the Rotunda, defendant "lit up a joint and began to smoke as if this were a party," *id.* at 156:5–7, and as police tried to remove unauthorized people from the Rotunda, defendant "used his body as a battering ram to push protesters toward the police, providing clear physical support to the rioters in front of him and egging them on in their physical altercation with the police," *id.* at 156:13–157:6. As defendant "drew near to the police," he "hit a police officer on the head with" his water bottle, which he then used to "spray[] liquid across the multiple officers who were seen to flinch." *Id.* at 157:7–16. "It took being pepper sprayed to the face before [] defendant decided finally to exit the Capitol more than an hour after he initially went in." *Id.* at 150:22–24.

In the weeks following the attack on the Capitol, defendant sent messages to friends reflecting "a defensiveness and an arrogance about his role in the riot, even as he also sought to

shield his role by . . . aggressively defending his actions on January 6th to others." *Id.* at 157:17–24.  Although defendant expressed remorse at the time of sentencing, *see id.* at 153:5–6, thereafter, defendant made statements on Twitter "describ[ing] himself as a political prisoner" and "confess[ing] that many of the events around January 6th were lies," backtracking from the expressions of remorse at sentencing that had contributed to this Court reducing defendant's advisory guidelines range "by three points for what appeared to be acceptance of responsibility and an understanding of what his conduct caused on January 6, 2021."  Pretrial Violation Hr'g Tr. at 4:25–5:4, 7:21–8:5, ECF No. 93.

Defendant argues that he "is not a flight risk," as supported by the fact that this "Court would not have released [him] . . . unless it found that he was not likely to flee or pose a danger." Def.'s Reply at 2–3.  Defendant is correct that, notwithstanding his egregious offense conduct on January 6, 2021, the government did not seek pretrial detention or object to him remaining on release pending sentencing and to self-surrendering.   *See* Minute Entry (Mar. 2, 2021) ("Government does not seek the Defendant's pretrial detention"); Sentencing Tr. at 163:20–165:8 (granting defendant's motion to self-surrender with no opposition from the government); Def.'s Reply at 2.  Yet, defendant glosses over the fact that he was ordered detained, at the government's request, less than one week before his self-surrender date on July 6, 2022, following a pretrial services report of defendant's concerning conduct "towards both his supervising officer . . . and the subsequent text messages that were sent to his mental health therapist," and of defendant's "extremely argumentative" behavior toward law enforcement during a vehicular stop.  Pretrial Violation Hr'g Tr. at 3:21–25, 4:18–20, 8:6–12; *see also* Pretrial Violation Rep. at 2–3.  Among the fourteen pages of text messages, defendant cursed his mental health therapist, "the government," "the system," and "the protocols"; threatened to "rip[]" off his ankle monitor; and

threatened his pretrial services officer, writing, "if this bullshiy [sic] doesn't get changed on appeals and they fucking keep me in there . . . they can fucking test me," "they will feel like what's it like to get attacked by someone who was trained by the marines."  Pretrial Violation Rep., Att. at 5–8, 10, 14, ECF No. 76-1.  After beginning his term of imprisonment, moreover, defendant appeared to adopt the anti-government "sovereign citizen" ideology and "contest the legitimacy and authority of the District Court for the District of Columbia," Gov't's Opp'n at 4, in a motion for new discovery and to terminate counsel that this Court promptly denied, *see* Minute Order (Nov. 1, 2022).

No reports from the BOP facility where defendant is serving his sentence have been submitted regarding whether he is compliant with the facility's rules and using his time constructively in programming to promote rehabilitation and support a successful reentry into the community if released.

Despite this deficit in the record of any reports from BOP and defendant's defiant and troubling defense of his actions on January 6, 2021, even after his sentencing, he now represents that "he fully understands the Court's jurisdiction over this criminal case, and him," and that, contrary to an argument made by the government, "the reality of confinement makes him less likely to flee, not more" because he "understands that flight is itself a crime that would incur another criminal charge and another term of imprisonment."  Def.'s Reply at 2–3 (emphasis omitted).  Having accepted as true defendant's statements of remorse at the sentencing hearing, the Court was forced to have second thoughts after viewing defendant's Twitter posts while on release pending self-surrender, which belied "any sense of remorse."  Pretrial Violation Hr'g Tr. at 8:3–5.  This concern about defendant's post-sentencing conduct was only compounded by his apparent embrace after beginning his sentence of the "sovereign citizen" ideology, which generally

denies the jurisdiction of this Court.  On this record, no longer will defendant's post-incarceration representations be accepted at face value.  To the contrary, as the government correctly points out, this record provides little assurance that defendant's "unsupported assertion that he poses no flight risk and . . . would abide by an order from the Court to return to custody," Gov't's Opp'n at 4, warrants crediting.

Defendant only harkens back to the fact that both the government and this Court were aware of his offense conduct "when he was released pre-trial and . . . post-sentencing," supporting his claim that he poses no "danger to any person or community."  Def.'s Reply at 3.  Yet, the government's concern that defendant may pose a danger to others is legitimate, considering defendant's justification of his violent actions on January 6, 2021, while on release pending self-surrender, and defendant's threatening messages to his mental health therapist as his self-surrender date approached.  Pretrial Violation Hr'g Tr. at 7:25–8:5.  Defendant's unsupported assertion that the mere "fact that the government foresees a contentious election" is immaterial "because [he] will not again engage in conduct that sent him to prison in this case," Def.'s Reply at 3, fails to assure this Court that the "heated political environment" of the election year will not "again drive [defendant] to break the law and attack officers in order to see his preferred candidate win," Gov't's Opp'n at 5, and this Court is accordingly not satisfied that defendant "is not likely to . . . pose a danger" to others if released, 18 U.S.C. § 3143(b)(1)(A).

Second, even assuming that defendant were able to satisfy the first prong as posing neither a flight or safety risk and, further, that defendant's appeal "raises a substantial question of law or fact," 18 U.S.C. § 3143(b)(1)(B), he fails to satisfy the remainder of Section 3143(b)'s second prong.  Neither party contends that should the Supreme Court's *Fischer* decision require reversal of defendant's conviction under Section 1512(c)(2), that this would lead to "reversal" of any other

conviction, "an order for a new trial," or "a sentence that does not include a term of imprisonment," *id.* § 3143(b)(1)(B)(i)–(iii), since "there are other counts of conviction not at issue in *Fischer*," Gov't's Opp'n at 6.  More to the point, a reversal of defendant's Section 1512(c)(2) conviction is not likely to result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process," where the parties anticipate a decision in *Fischer* in June, with defendant's appeal of his Section 1512(c)(2) conviction to be resolved thereafter.  18 U.S.C. § 3143(b)(1)(B)(iv); *see* Def.'s Reply at 5; Gov't's Opp'n at 7–8.[4]

Defendant was sentenced to 41 months' imprisonment on each of the two other felony counts to which he pleaded guilty—Count One, for civil disorder in violation of 18 U.S.C. § 231(a)(3), and Count Three, for assault of federal officers in violation of 18 U.S.C. § 111(a)(1)— neither of which is at-issue in *Fischer*.  *See* Sentencing Tr. at 159:13–19.  The parties do not dispute that the guideline applicable to Count Three would control the group consisting of Counts One, Three, Four, Five, and Six, as the guideline with the highest offense level.  *See* U.S.S.G. § 3D1.2(b)–(c); *see also* Gov't's Opp'n at 6–7; Def.'s Reply at 4–5.[5]  U.S.S.G. § 2A2.2(a) would apply, providing a base offense level of 14, which would be increased by 6 offense levels pursuant

---

[4]    The government contends that, since defendant did not move to dismiss Count Two prior to entering a plea of guilty to that and all other counts in the Superseding Indictment, "defendant has likely forfeited, if not waived, any challenge to the validity of his conviction under § 1512." Gov't's Opp'n at 5 n.1.  Defendant counters that *Fischer*, on which defendant's appeal of his Section 1512(c)(2) conviction rests, raises constitutional issues that would not be forfeited by defendant's guilty plea.  Def.'s Reply at 4 n.1.  Without resolving the government's waiver challenge, and assuming defendant's guilty plea does not waive any constitutional challenge that may be raised in *Fischer*, *see Al Bahlul v. United States*, 967 F.3d 858, 875–76 (D.C. Cir. 2020) (citing *Class v. United States*, 583 U.S. 174, 178–82 (2018)), as explained *infra*, a reversal in *Fischer* would not likely lead to "a reduced sentence . . . less than the total of the time already served plus the expected duration of the appeal process, under 18 U.S.C. § 3143(b)(1)(B)(iv), in any event.

[5]    Defendant contends that "the highest possible offense level without the obstruction conviction is 14," for Counts One and Three, under U.S.S.G. § 2A2.2, Def.'s Mot. at 7, but this is an incorrect calculation of the total offense level and ignores the official-victim enhancement, under U.S.S.G. § 3A1.2(b), which provides for an increase by 6 offense levels.  Moreover, defendant assumes incorrectly that he would be eligible for a two-level reduction, pursuant to U.S.S.G. § 4C1.1 for "zero point" offenders, *see* Def.'s Mot. at 7, but he is not because defendant did "use violence . . . in connection with the offense," U.S.S.G § 4C1.1; Gov't's Opp'n at 6–7.

to § 3A1.2(b), because the victim of the assaultive conduct was a law enforcement official.  Both parties assume that defendant would benefit from a three-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, as was applied at sentencing.  *See* Def.'s Mot. at 7; Gov't's Opp'n at 6.  Based on these assumptions, the government calculates a total offense level of "at least" 17, with an accompanying sentencing range of 24 to 30 months' incarceration, but indicates that, at any resentencing, the government would likely seek an upward variance from this range.  *See* Gov't's Opp'n at 6–7.[6]

At any resentencing, the entire record would be available for review, including defendant's post-sentencing Twitter posts "describ[ing] himself as a political prisoner" and "confess[ing] that many of the events around January 6th were lies," which prompted this Court to question the previous application of the three-point reduction for acceptance of responsibility, Pretrial Violation Hr'g Tr. at 4:23–5:4, 7:21–8:5, and would make unlikely application of a similar reduction at any resentencing.  The total adjusted offense level would therefore likely be 20, which, combined with a criminal history category of I, would produce an advisory sentencing range of 33 to 41 months' imprisonment.

Defendant argues for immediate release, reasoning, based on the government's proffered sentencing range of 24 to 30 months' imprisonment and the benefit of "good time credits and [First Step Act] credits," that defendant "has already served a two-year sentence" called for at the bottom of this range, and "[e]ven if the Court re-sentenced [defendant] at the top of the new guideline range, 30 months, he would complete his sentence entirely in less than two months."  Def.'s Reply

---

[6] The government further argues that defendant's "guidelines could remain unchanged," based on the cross reference applicable to defendant's conviction on Count Four, for violation of 18 U.S.C. § 1752(a)(1), and the upward adjustment for defendant's obstruction.  Gov't's Opp'n at 7 n.2.  This argument need not be resolved here, since, as discussed *infra*, defendant's "likely reduced sentence" would in any event exceed "the total of the time already served plus the expected duration of the appeal process."  18 U.S.C. § 3143(b)(1)(B)(iv).

at 5 (emphasis omitted).  Not so fast.  The Court's best estimate of the likely applicable sentencing range at any resentencing, in the event defendant's conviction under Section 1512(c)(2) is vacated, is actually 33 to 41 months' imprisonment, rather than 24 to 30 months.  Given the egregiousness of defendant's offense conduct, a sentence at the top of that range, would be applied.  Indeed, at the sentencing hearing, this Court found that defendant had engaged in conduct "more egregious" in certain ways than other defendants who were also convicted of violating 18 U.S.C. §§ 1512(c)(2) and 111(a)(1), and were sentenced to a term of between 41 and 51 months' imprisonment.  Sentencing Tr. at 158:8–159:10.  Consistent with this finding, and as the government correctly asserts, defendant's conduct "amply justifies the Court's forty-one month sentence, and certainly justifies at least two years of incarceration."  Gov't's Opp'n at 7 (emphasis omitted).

Without pre-judging resolution of any government motion for an upward variance, and factoring in the maximum amount of good-time credits to which defendant may be entitled, defendant would not, as he acknowledges, finish serving his likely reduced sentence until after "the Supreme Court is expected to issue a decision in *Fischer*."  Gov't's Opp'n at 9; *see* Def.'s Reply at 5 ("Of the bottom-of-the-range 41-month sentence previously imposed, [defendant] has less than 12 months remaining." (citation omitted)).  A reversal of defendant's Section 1512(c)(2) count, therefore, would not result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."  18 U.S.C. § 3143(b)(1)(B)(iv).

Accordingly, defendant's Motion for Release Pending Appeal is DENIED.

## III.    CONCLUSION AND ORDER

For the reasons set forth above, defendant's Motion for Release Pending Appeal, ECF No.

83, is DENIED.

Date: March 4, 2024

_____
**BERYL A. HOWELL**
United States District Judge